UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Thomas Davis and<br>Patricia Davis, h/w | : | COMPLAINT AND DEMAND<br>FOR JURY TRIAL |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | Case No. _____ |
| AbbVie Inc., | : | |
| Abbott Laboratories, Inc., | : | |
| | : | |
| Defendants. | : | |
| | : | |

## COMPLAINT

Plaintiffs, Thomas Davis and Patricia Davis ("Plaintiffs"), residing in State College, Pennsylvania, by and through their undersigned counsel, hereby sue Defendants AbbVie Inc. and Abbott Laboratories, Inc. ("Defendants") and allege as follows:

## INTRODUCTION

1. This case involves the prescription drug AndroGel, which is manufactured, sold, distributed and promoted by Defendants as a testosterone replacement therapy.

2. Defendants misrepresented that AndroGel is a safe and effective treatment for hypogonadism or "low testosterone," when in fact the drug causes serious medical problems, including life threatening cardiac events, strokes, and thrombolytic events.

3. Defendants engaged in aggressive, award-winning direct-to-consumer and physician marketing and advertising campaigns for AndroGel. Further, Defendants engaged in an aggressive unbranded "disease awareness" campaign to alert men that they might be suffering from "low T."

1

4.     As a result, diagnoses of Low T have increased exponentially. This has directly related to AndroGel's sales increasing to over $1.37 billion per year.

5.     However, consumers of AndroGel were misled as to the drug's safety and efficacy, and as a result have suffered injuries including life-threatening cardiac events, strokes, and thrombolytic events.

<u>**PARTIES**</u>

6.     Plaintiffs, Thomas Davis and Patricia Davis, are husband and wife and citizens of the Commonwealth of Pennsylvania. Plaintiffs reside at 1632 Bristol Avenue, Apartment 803, State College, Pennsylvania 16801.

7.     Defendant AbbVie Inc. is a corporation organized and existing under the laws of Delaware with its principal place of business at 1 North Waukegan Road, North Chicago, Illinois 60064.

8.     Defendant Abbot Laboratories, Inc. is a corporation organized and existing under the laws of the state of Illinois and maintains its principal place of business at 100 Abbot Park Road, Abbott Park, Illinois 60064.

9.     By way of background, Unimed Pharmaceuticals Inc. originally developed AndroGel and sought FDA approval in 1999. Before the drug was approved by the FDA in 2000, Solvay Pharmaceuticals Inc. acquired Unimed Pharmaceuticals, Inc. and subsequently brought AndroGel to market. In 2010, Defendant Abbott Laboratories, Inc. acquired Solvay's pharmaceutical division, which included AndroGel. Then, in 2013, Abbott created AbbVie, a company composed of Abbott's former proprietary pharmaceutical business, which included AndroGel.

10.     At all times herein mentioned, Defendants, in interstate commerce and in this judicial district, advertised, promoted, supplied, and sold to distributors and retailers for resale to physicians, hospitals, medical practitioners, and the general public a certain pharmaceutical product, AndroGel.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over Defendants and this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiffs and Defendants and because the amount in controversy between Plaintiffs and Defendants exceeds $75,000, exclusive of interest and cost, and because, among other reasons, Defendants have significant contacts with this district by virtue of doing business within this judicial district.

12.     Venue is proper within this district pursuant to 28 U.S.C. § 1391 because Defendants conduct regular and systematic business within the district and because a substantial part of the acts and/or omissions giving rise to these claims occurred within this district.

## GENERAL ALLEGATIONS

13.     This action is for damages brought on behalf of Plaintiffs, Thomas Davis and Patricia Davis. Plaintiff Thomas Davis was prescribed and supplied with, received and has taken and applied the prescription drug AndroGel, as tested, studied, researched, evaluated, endorsed, designed, formulated, compounded, manufactured, produced, processed, assembled, inspected, distributed, marketed, labeled, promoted, packaged, advertised for sale, prescribed, sold or otherwise placed in the stream of interstate commerce by Defendants. This action seeks, among other relief, general and special damages and equitable relief in order to enable Plaintiff, Thomas Davis, to treat and monitor the dangerous, severe and life-threatening side effects caused by this drug.

14.    Defendants' wrongful acts, omissions, and fraudulent misrepresentations caused Plaintiffs' injuries and damages.

15.    At all times herein mentioned, the Defendants were engaged in the business of, or were successors in interest to, entities engaged in the business of research, licensing, designing, formulating, compounding, testing, manufacturing, producing, processing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging and/or advertising for sale or selling the prescription drug AndroGel for the use and application by Plaintiff, Thomas Davis.

16.    At all times herein mentioned, Defendants were authorized to do business within the state of residence of Plaintiffs.

17.    At all times herein mentioned, the officers and directors of Defendants participated in, authorized, and directed the production and promotion of the aforementioned product when they knew, or with the exercise of reasonable care should have known, of the hazards and dangerous propensities of said product and thereby actively participated in the tortious conduct which resulted in the injuries suffered by Plaintiffs herein.

18.    Plaintiffs file this lawsuit within the applicable limitations period of first suspecting that said drugs caused the appreciable harm sustained by Plaintiff, Thomas Davis. Plaintiff, Thomas Davis, could not, by the exercise of reasonable diligence, have discovered the wrongful case of Plaintiff's injuries at an earlier time because the injuries were caused without perceptible trauma or harm, and when Plaintiff's injuries were discovered their cause was unknown to Plaintiff. Plaintiff did not suspect, nor did Plaintiff have reason to suspect, that Plaintiff had been injured, the cause of the injuries, or the tortious nature of the conduct causing the injuries, until less than the applicable limitations period prior to the filing of this action. Additionally, Plaintiff was prevented from discovering this information sooner because

Defendants herein misrepresented and continue to misrepresent to the public and to the medical profession that the drug AndroGel is safe and free from serious side effects, and Defendants have fraudulently concealed facts and information that could have led Plaintiff to discover a potential cause of action.

## OVERVIEW

19.    Hypogonadism is a specific condition of the sex glands, which in men may involve the diminished production or nonproduction of testosterone.

20.    In 1999, when Unimed Pharmaceuticals Inc., one of the Defendants' predecessor companies, asked for FDA approval of AndroGel, it asserted that hypogonadism was estimated to affect approximately "one million American men."

21.    In 2000, when the FDA approved AndroGel, the company announced that the market was "four to five million American men." By 2003, the number increased to "up to 20 million men." However, a study published in the Journal of the American Medical Association ("JAMA") in August 2013 entitled "Trends in Androgen Prescribing in the United States, 2001-2011" indicated that many men who get testosterone prescriptions have no evidence of hypogonadism. For example, one third of men prescribed testosterone had a diagnosis of fatigue, and one quarter of men did not even have their testosterone levels tested before they received a testosterone prescription.

22.    Defendants coordinated a massive advertising campaign designed to convince men that they suffered from low testosterone. Defendants orchestrated a national disease awareness media blitz that purported to educate male consumers about the signs of low testosterone. The marketing campaign consisted of television advertisements, promotional

literature placed in healthcare providers' offices and distributed to potential AndroGel users, and online media including the unbranded website "IsItLowT.com."

23.     The television advertisements suggest that various symptoms often associated with other conditions may be caused by low testosterone and encourage men to discuss testosterone replacement therapy with their doctors if they experienced any of the "symptoms" of low testosterone. These "symptoms" include listlessness, increased body fat, and moodiness—all general symptoms that are often a result of aging, weight gain, or lifestyle, rather than low testosterone.

24.     Since the FDA approved AndroGel, Defendants have also sought to convince primary care physicians that low testosterone levels are widely under-diagnosed, and that conditions associated with normal aging could be caused by low testosterone levels.

25.     While running its disease awareness campaign, Defendants promote their product AndroGel as an easy to use topical testosterone replacement therapy. Defendants contrast their product's at-home topical application with less convenient prescription testosterone injections, which require frequent doctor visits.

26.     Defendants convinced millions of men to discuss testosterone replacement therapy with their doctors, and consumers and their physicians relied on Defendants' promises of safety and ease. Although prescription testosterone replacement therapy had been available for years, millions of men who had never been prescribed testosterone flocked to their doctors and pharmacies.

27.     What consumers received, however, were not safe drugs, but a product which causes life-threatening problems, including strokes and heart attacks.

6

28.     Defendants successfully created a robust and previously nonexistent market for their drug. Defendant Abbott Laboratories spent $80 million promoting AndroGel in 2012. The company also spent millions on its unbranded marketing including commercials and its websites, www.IsItLowT.com and www.DriveForFive.com, sites which recommend that men have regular checkups with their physicians and five regular tests done: including cholesterol, blood pressure, blood sugar, prostate-specific antigen, and testosterone.

29.     Defendants' advertising paid off in a return of $1.4 billion in sales during the past year, making AndroGel the biggest selling androgen drug in the United States.   Sales of replacement therapies have more than doubled since 2006, and are expected to triple to $5 billion by 2017, according to forecasts by Global Industry Analysts.   Shannon Pettypiece, *Are Testosterone Drugs the Next Viagra?*, May 10, 2012, Bloomberg Businessweek, *available at:* http://www.businessweek.com/articles/2012-05-10/are-testosterone-drugs-the-next-viagra.

30.     In early 2013, Medical Marketing & Media named two AbbVie executives as "the all-star large pharma marketing team of the year" for promotions of AndroGel and unbranded efforts to advance low T. *See* Singer, *Selling That New-Man Feeling*, *supra*; See *also*, Larry Dobrow, *All-star large pharma marketing team of the year: Androgel*. Jan. 2, 2013, Medical Marketing & Media, *available at:* http://www.mmm-online.com/all-star-large-pharma-marketing-team-of-the-year-androgel/article/273242/.

31.     The marketing program sought to create the image and belief by consumers and physicians that low testosterone affected a large number of men in the United States and that the use of AndroGel is safe for human use, even though Defendants knew these to be false, and even though Defendants had no reasonable grounds to believe them to be true.

32.     There have been a number of studies suggesting that testosterone in men increases the risk of heart attacks and strokes.

33.     In 2010, a New England Journal of Medicine Study entitled "Adverse Events Associated with Testosterone Administration" was discontinued after an exceedingly high number of men in the testosterone group were suffered adverse events.

34.     In November of 2013, a JAMA study was released entitled "Association of Testosterone Therapy with Mortality, Myocardial Infarction, and Stroke in Men with Low Testosterone Levels" which indicated that testosterone therapy raised the risk of death, heart attack and stroke by about 30%.

35.     On January 29, 2014, a study was released in PLOS ONE entitled "Increased Risk of Non-Fatal Myocardial Infarction Following Testosterone Therapy Prescription in Men" which indicated that testosterone use doubled the risk of heart attacks in men over sixty five years old and men younger than sixty five with a previous diagnosis of heart disease.

## FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

36.     The Food and Drug Administration approved AndroGel 1% on February 28, 2000 for the treatment of adult males who have low or no testosterone (AndroGel 1.62% was approved in April, 2011). After FDA approval, AndroGel was widely advertised and marketed by Defendant as a safe and effective testosterone replacement therapy.

37.     AndroGel, is a hydroalcoholic gel containing testosterone in either 1% or 1.62%, applied to the chest, arms or stomach and enters the body through transdermal absorption. The AndroGel 1.62% product also contains isopropyl myristate as an ointment and ethanol for absorption enhancement.

8

38.     Testosterone is a primary androgenic hormone responsible for normal growth, development of the male sex organs, and maintenance of secondary sex characteristics.

39.     The hormone plays a role in sperm production, fat distribution, maintenance of muscle strength and mass, and sex drive.

40.     In men, testosterone levels normally begin a gradual decline after the age of thirty.

41.     The average testosterone levels for most men range from 300 to 1,000 nanograms per deciliter of blood.  However, testosterone levels can fluctuate greatly depending on many factors, including sleep, time of day, and medication.  Resultantly, many men who fall into the hypogonadal range one day will have normal testosterone levels the next.

42.     AndroGel may produce undesirable side effects to patients who use the drug, including but not limited to, myocardial infarction, stroke, and death.

43.     In some patient populations, AndroGel use may increase the incidence of myocardial infarctions and death by over 500%.

44.     In addition to the above, AndroGel has been linked to several severe and life changing medical disorders in both users and those who come into physical contact with users or the unwashed clothes of someone who applied AndroGel. Patients taking AndroGel may experience enlarged prostates and increased serum prostate-specific antigen levels.

45.     Secondary exposure to AndroGel can cause side effects in others. In 2009 the FDA issued a black box warning for AndroGel prescriptions, advising patients of reported virilization in children who were secondarily exposed to the gel. Testosterone may also cause physical changes in women exposed to the drug and cause fetal damage with pregnant women who come into secondary contact with AndroGel.

46.    Defendants' marketing strategy beginning in 2000 has been to aggressively market and sell their products by misleading potential users about the prevalence and symptoms of low testosterone and by failing to protect users from serious dangers that Defendants knew or should have known to result from use of its products.

47.    Defendants successfully marketed AndroGel by undertaking a "disease awareness" marketing campaign. This campaign sought to create a consumer perception that low testosterone is prevalent among U.S. men and that symptoms previously associated with other physical and mental conditions, such as aging, stress, depression, and lethargy were actually attributable to "Low-T."

48.    AbbVie's advertising program, sought to create the image and belief by consumers and their physicians that the use of AndroGel was a safe method of alleviating their symptoms, had few side effects and would not interfere with their daily lives, even though Defendants knew or should have known these to be false, and even though the Defendants had no reasonable grounds to believe them to be true.

49.    Defendants purposefully downplayed, understated and outright ignored the health hazards and risks associated with using AndroGel. Defendants deceived potential AndroGel users by relaying positive information through the press, including testimonials from retired professional athletes, and manipulating hypogonadism statistics to suggest widespread disease prevalence, while downplaying known adverse and serious health effects.

50.    Defendants concealed material relevant information from potential AndroGel users and minimized user and prescriber concern regarding the safety of AndroGel.

51.     In particular, in the warnings Defendants give in their commercials, online and print advertisements, Defendants fail to mention any potential cardiac or stroke side effects and falsely represents that AbbVie adequately tested AndroGel for all likely side effects.

52.     As a result of Defendants' advertising and marketing, and representations about its product, men in the United States pervasively seek out prescriptions for AndroGel.  If Plaintiff, Thomas Davis, had known the risks and dangers associated with AndroGel, Plaintiff would not have taken AndroGel and consequently would not have been subject to its serious side effects.

## SPECIFIC FACTUAL ALLEGATIONS

53.     Plaintiff, Thomas Davis, was prescribed AndroGel 1% and used it as directed from approximately February 2011 to August 20, 2012.

54.     Plaintiff was 61 years of age when he was prescribed and used testosterone for symptoms he attributed to low testosterone.

55.     Plaintiff relied on claims made by Defendants that testosterone had been clinically shown to safely and effectively raise testosterone levels.

56.     Plaintiff was diagnosed with a myocardial infarction on or about August 20, 2012. As a result, for the rest of his life he must undergo regular testing, adhere to a restrictive diet, and take medication.  Due to his myocardial infarction he is now at markedly increased risk of additional cardiovascular disease, cerebrovascular accidents, and death.

57.     Had Defendants properly disclosed the risks associated with testosterone, Plaintiff would have avoided the risk of myocardial infarction by either not using testosterone at all, severely limiting the dosage and length of use, and/or by closely monitoring the degree to which the drugs were adversely affecting his health.

58.     As alleged herein, as a direct, proximate, and legal result of Defendants' negligence and wrongful conduct, and the unreasonably dangerous and defective characteristics of the drug testosterone, Plaintiff suffered severe and permanent physical and emotional injuries, including, but not limited to myocardial infarction.  Plaintiff has endured pain and suffering, has suffered economic loss, including incurring significant expenses for medical care and treatment and will continue to incur such expenses in the future.  Plaintiffs seek actual and punitive damages from Defendants as alleged herein.

**FIRST CAUSE OF ACTION**
**STRICT LIABILITY – FAILURE TO WARN**

59.     Plaintiffs incorporate by reference herein each of the allegations heretofore set forth in this Complaint as though fully set forth herein.

60.     The AndroGel manufactured and/or supplied by Defendants was defective due to inadequate warnings or instructions because Defendants knew or should have known that the product created significant risks of serious bodily harm to consumers, and they failed to adequately warn consumers and/or their health care providers of such risks. The AndroGel manufactured and/or supplied by Defendants was defective due to inadequate post-marketing warnings or instructions because, after Defendants knew or should have known of the risk of serious bodily harm from the use of AndroGel, Defendants failed to provide an adequate warning to consumers and/or their health care providers of the product, knowing the product could cause serious injury.

61.     As a direct and proximate result of Plaintiff Thomas Davis' reasonably anticipated use of AndroGel as manufactured, designed, sold, supplied, marketed and/or introduced into the stream of commerce by Defendants, Plaintiffs suffered serious injury, harm,

12

damages, economic and non-economic loss and will continue to suffer such harm, damages and losses in the future.

**SECOND CAUSE OF ACTION**
**STRICT LIABILITY—DESIGN DEFECT**

62.     Plaintiffs incorporate by reference herein each of the allegations heretofore set forth in this Complaint as though fully set forth herein.

63.     AndroGel was in a defective condition and unreasonably dangerous due to inadequate testing, warnings and instructions for use, which created significant health risks and threat of serious bodily harm to consumers at large, including Plaintiff, Thomas Davis.

64.     Defendants are strictly liable for AndroGel which was in a defective condition and unreasonably dangerous because of the inadequate and incomplete testing, and warnings and instructions for use to Plaintiff and Plaintiff's physicians.

65.     Defendants are strictly liable for AndroGel which was in a defective condition and unreasonably dangerous because of its design.

66.     The risk-utility of AndroGel as a treatment for a contrived and pharmaceutical industry-created and -driven condition known as "Low T" was such that this product presented substantial and unreasonable risk with unproven safety or utility.

67.     Consumers including Plaintiff and Plaintiff's physicians had the expectation that AndroGel, as designed, tested, and placed within the stream of interstate commerce, was safe and effective for the uses outlined by the Defendants, detailed to physicians, and advertised to the public at large by way of direct-to-consumer advertising.

68.     Plaintiff, Thomas Davis, used AndroGel, which the Defendants manufactured, designed, sold, supplied, marketed or otherwise introduced into the stream of commerce, and AndroGel caused serious physical injuries to Plaintiff. Defendants' defective design and testing

of AndroGel is the legal cause of Plaintiff's serious physical injuries, harm, damages and economic loss. Plaintiffs will continue to suffer such harm, damages and economic loss in the future.

**THIRD CAUSE OF ACTION**
**NEGLIGENCE**

69.     Plaintiffs incorporate by reference herein each of the allegations set forth in this Complaint as though set forth herein.

70.     At all times herein mentioned, Defendants had a duty to properly manufacture, design, formulate, compound, test, produce, process, assemble, inspect, research, distribute, market, label, package, distribute, prepare for use, sell, prescribe and adequately warn of the risks and dangers of AndroGel.

71.     At all times herein mentioned, Defendants negligently and carelessly manufactured, designed, formulated, distributed, compounded, produced, processed, assembled, inspected, distributed, marketed, labeled, packaged, prepared for use and sold AndroGel and failed to adequately test and warn of the risks and dangers of AndroGel.

72.     Despite the fact that Defendants knew or should have known that AndroGel caused unreasonable, dangerous side effects, Defendants continued to market AndroGel to consumers including Plaintiff, Thomas Davis, when there were safer alternative methods of treating loss of energy, libido erectile dysfunction, depression, loss of muscle mass and other conditions AndroGel's advertising claims are caused by low testosterone.

73.     Defendants knew or should have known that consumers such as Plaintiff, Thomas Davis, would foreseeably suffer injury as a result of Defendants' failure to exercise ordinary care as described above.

74. Defendants' negligence was a proximate cause of Plaintiffs' injuries, harm and economic loss which Plaintiffs suffered, and will continue to suffer, as described and prayed for herein.

**FOURTH CAUSE OF ACTION**
**NEGLIGENT MARKETING**

75. Plaintiffs incorporates by reference herein each of the allegations set forth in this Complaint as though set forth herein.

76. Defendants had a duty to exercise reasonable care in the marketing of AndroGel. In particular, they had a duty to assure that their product did not pose an unreasonable risk of bodily harm and adverse events.

77. Defendants failed to exercise reasonable care in the marketing of AndroGel in that they knew or should have known that this product could cause significant bodily harm or death and was not safe for use by consumers including Plaintiff.

78. Defendants failed to exercise ordinary care in the initial design of AndroGel, in the failure to investigate information about the risks AndroGel poses, and in their decision to continue to sell AndroGel despite those unreasonable risks.

79. At all relevant times, it was foreseeable to Defendants that consumers like Plaintiff would suffer injury as a result of Defendants' failure to exercise ordinary care as described above.

80. As a direct and proximate result of Defendants' negligence, Plaintiff has suffered physical injuries, harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

## FIFTH CAUSE OF ACTION
## NEGLIGENT DESIGN

81.     Plaintiffs incorporate by reference herein each of the allegations set forth in this Complaint as though set forth herein.

82.     Defendants had a duty to exercise reasonable care in the design of AndroGel.  In particular, they had a duty to assure that their product did not pose an unreasonable risk of bodily harm and adverse events.

83.     Defendants failed to exercise reasonable care in the design of AndroGel in that they knew or should have known that this product could cause significant bodily harm or death and was not safe for use by consumers, including Plaintiff.

84.     At all relevant times, it was foreseeable to Defendants that consumers like Plaintiff would suffer injury as a result of Defendants' failure to exercise ordinary care as described above.

85.     As a direct and proximate result of Defendants' negligence, Plaintiff has suffered physical injuries, harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

## SIXTH CAUSE OF ACTION
## NEGLIGENT MISREPRESENTATION

86.     Plaintiffs incorporate by reference herein each of the allegations set forth in this Complaint as though fully set forth herein.

87.     From the time AndroGel was first tested, studied, researched, evaluated, endorsed, manufactured, marketed and distributed, and up to the present, Defendants made misrepresentations to Plaintiff, Thomas Davis, Plaintiff's physicians and the general public, including but not limited to the misrepresentation that AndroGel was safe, fit and effective for

16

human consumption. At all times mentioned, Defendants conducted a sales and marketing campaign to promote the sale of AndroGel and willfully deceive Plaintiff, Plaintiff's physicians and the general public as to the health risks and consequences of the use of the abovementioned product.

88.     The Defendants made the foregoing representation without any reasonable ground for believing them to be true. These representations were made directly by Defendants, by sales representatives and other authorized agents of Defendants, and in publications and other written materials directed to physicians, medical patients and the public, with the intention of inducing reliance and the prescription, purchase and use of the subject product.

89.     The representations by the Defendants were in fact false, in that AndroGel is not safe, fit and effective for human consumption, using AndroGel is hazardous to health, and AndroGel has a serious propensity to cause serious injuries to users, including but not limited to the injuries suffered by Plaintiff, Thomas Davis.

90.     The foregoing representations by Defendants, and each of them, were made with the intention of inducing reliance and the prescription, purchase and use of AndroGel.

91.     In reliance of the misrepresentations by the Defendants, and each of them, Plaintiff, Thomas Davis, was induced to purchase and use AndroGel. If Plaintiff had known of the true facts and the facts concealed by the Defendants, Plaintiff would not have used AndroGel. The reliance of Plaintiff upon Defendants' misrepresentations was justified because such misrepresentations were made and conducted by individuals and entities that were in a position to know the true facts.

92.     As a result of the foregoing negligent misrepresentations by Defendants, Plaintiffs suffered injuries and damages as alleged herein.

## SEVENTH CAUSE OF ACTION
## FOR BREACH OF IMPLIED WARRANTY

93.     Plaintiffs incorporate by reference here each of the allegations heretofore set forth in this Complaint as though fully set forth herein.

94.     Prior to the time that the aforementioned products were used by Plaintiff, Thomas Davis, Defendants impliedly warranted to Plaintiff and Plaintiff's agents and physicians that AndroGel was of merchantable quality and safe and fit for the use for which it was intended.

95.     Plaintiff, Thomas Davis, was and is unskilled in the research, design and manufacture of the products and reasonably relied entirely on the skill, judgment and implied warranty of the Defendants in using AndroGel.

96.     AndroGel was neither safe for its intended use nor of merchantable quality, as warranted by Defendants, in that AndroGel has dangerous propensities when used as intended and will cause severe injuries to users.

97.     As a result of the abovementioned breach of implied warranties by Defendants, Plaintiffs suffered injuries and damages as alleged herein.

## EIGHTH CAUSE OF ACTION
## FOR BREACH OF EXPRESS WARRANTY

98.     Plaintiffs incorporate by reference here each of the allegations set forth in this Complaint as though fully set forth here.

99.     At all times mentioned, Defendants expressly represented and warranted to Plaintiff, Thomas Davis, and Plaintiff's agents and physicians, by and through statements made by Defendants or their authorized agents or sales representatives, orally and in publications, package inserts and other written materials intended for physicians, medical patients and the

general public, that AndroGel is safe, effective, fit and proper for its intended use. Plaintiff purchased AndroGel relying upon these warranties.

100.    In utilizing AndroGel, Plaintiff, Thomas Davis, relied on the skill, judgment, representations, and foregoing express warranties of Defendants. These warranties and representations were false in that AndroGel is unsafe and unfit for its intended uses.

101.    As a result of the abovementioned breach of express warranties by Defendants, Plaintiffs suffered injuries and damages as alleged herein.

## NINTH CAUSE OF ACTION
## FRAUD

102.    Plaintiffs incorporate by reference here each of the allegations set forth in this Complaint as though set forth fully herein.

103.    Defendants, from the time they first tested, studied, researched, evaluated, endorsed, manufactured, marketed and distributed AndroGel, and up to the present, willfully deceived Plaintiff, Thomas Davis, by concealing from Plaintiff, Plaintiff's physicians and the general public, the true facts concerning AndroGel, which the Defendants had a duty to disclose.

104.    At all times herein mentioned, Defendants conducted a sales and marketing campaign to promote the sale of AndroGel and willfully deceive Plaintiff, Plaintiff's physicians and the general public as to the benefits, health risks and consequences of using AndroGel. Defendants knew of the foregoing, that AndroGel is not safe, fit and effective for human consumption, that using AndroGel is hazardous to health, and that AndroGel has a serious propensity to cause serious injuries to its users, including but not limited to the injuries Plaintiff suffered.

105.    Defendants concealed and suppressed the true facts concerning AndroGel with the intent to defraud Plaintiff, Thomas Davis, in that Defendants knew that Plaintiff's physicians

would not prescribe AndroGel, and Plaintiff would not have used AndroGel, if they were aware of the true facts concerning its dangers.

106.    As a result of Defendants' fraudulent and deceitful conduct, Plaintiffs suffered injuries and damages as alleged herein.

## TENTH CAUSE OF ACTION
## LOSS OF CONSORTIUM

107.    Plaintiffs incorporate by reference the paragraphs above, as though fully set forth herein.

108.    Plaintiff, Patricia Davis, is the wife of Plaintiff, Thomas Davis, and is entitled to his care, comfort, companionship, services, and consortium.

109.    As a direct and proximate result of the foregoing, Patricia Davis was deprived of the comfort and enjoyment of the services and society of her spouse, Thomas Davis, and has suffered and will continue to suffer economic loss, and has otherwise been emotionally and economically injured.  The Plaintiff's injuries and damages are permanent and will continue into the future.  The Plaintiffs seek actual and punitive damages from the Defendants as alleged herein.

## PUNITIVE DAMAGES ALLEGATIONS

110.    Plaintiffs incorporate by reference here each of the allegations set forth in this Complaint as though fully set forth herein.

111.    The acts, conduct, and omissions of Defendants, as alleged throughout this Complaint were willful and malicious. Defendants committed these acts with a conscious disregard for the rights of Plaintiffs and other AndroGel users and for the primary purpose of increasing Defendants' profits from the sale and distribution of AndroGel. Defendants'

outrageous and unconscionable conduct warrants an award of exemplary and punitive damages against Defendants in an amount appropriate to punish and make an example of Defendants.

112. Prior to the manufacturing, sale, and distribution of AndroGel, Defendants knew that said medication was in a defective condition as previously described herein and knew that those who were prescribed the medication would experience and did experience severe physical, mental, and emotional injuries. Further, Defendants, through their officers, directors, managers, and agents, knew that the medication presented a substantial and unreasonable risk of harm to the public, including Plaintiff, Thomas Davis, and as such, Defendants unreasonably subjected consumers of said drugs to risk of injury or death from using AndroGel.

113. Despite its knowledge, Defendants, acting through its officers, directors and managing agents for the purpose of enhancing Defendants' profits, knowingly and deliberately failed to remedy the known defects in AndroGel and failed to warn the public, including Plaintiff, Thomas Davis, of the extreme risk of injury occasioned by said defects inherent in AndroGel. Defendants and their agents, officers, and directors intentionally proceeded with the manufacturing, sale, and distribution and marketing of AndroGel knowing these actions would expose persons to serious danger in order to advance Defendants' pecuniary interest and monetary profits.

114. Defendants' conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary decent people, and was carried on by Defendants with willful and conscious disregard for the safety of Plaintiff, Thomas Davis, entitling Plaintiffs to exemplary damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief and judgment against Defendants as follows:

(a)    For general damages in a sum in excess of the jurisdictional minimum of this Court;

(b)    For medical, incidental, and hospital expenses according to proof;

(c)    For pre-judgment and post-judgment interest as provided by law;

(d)    For full refund of all purchase costs Plaintiff paid for testosterone;

(e)    For compensatory damages in excess of the jurisdictional minimum of this Court;

(f)    For consequential damages in excess of the jurisdictional minimum of this Court;

(g)    For punitive damages in an amount in excess of any jurisdictional minimum of this Court and in an amount sufficient to impress upon Defendants the seriousness of their conduct and to deter similar conduct in the future;

(h)    For attorneys' fees, expenses, and costs of this action; and

(i)    For such further relief as this Court deems necessary, just, and proper.

<u>**DEMAND FOR JURY TRIAL**</u>

Plaintiffs demand a trial by jury on all counts and as to all issues.

Dated: August 13, 2014               Respectfully submitted,

*/s/ Gregory S. Spizer*
Gregory S. Spizer, Esquire
**ANAPOL SCHWARTZ**
1710 Spruce Street
Philadelphia, Pennsylvania 19103
Telephone: (215) 790-4578
Facsimile: (215) 875-7722
gspizer@anapolschwartz.com
**Attorneys for Plaintiff**

22

JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
THOMAS DAVIS & PATRICIA DAVIS

**DEFENDANTS**
AbbVie Inc., Abbott Laboratories, Inc. and Auxilium Pharmaceuticals, Inc.

**(b)** County of Residence of First Listed Plaintiff   Centre
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Chester
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Gregory Spizer, Esquire, Anapol Schwartz, 1710 Spruce Street, Philadelphia, PA 19103; 215-790-4578

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1   U.S. Government   Plaintiff

☐ 3   Federal Question   *(U.S. Government Not a Party)*

☐ 2   U.S. Government   Defendant

☒ 4   Diversity   *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*   *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY**   **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane   ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product   Product Liability | | 28 USC 157 | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument |     Liability   ☒ 367 Health Care/ | | | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel &   Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 450 Commerce |
|    & Enforcement of Judgment |     Slander   Personal Injury | | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers'   Product Liability | | ☐ 830 Patent | ☐ 470 Racketeer Influenced and |
| ☐ 152 Recovery of Defaulted |     Liability   ☐ 368 Asbestos Personal | | ☐ 840 Trademark |     Corrupt Organizations |
|    Student Loans | ☐ 340 Marine   Injury Product | | | ☐ 480 Consumer Credit |
|    (Excludes Veterans) | ☐ 345 Marine Product   Liability | **LABOR** | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment |     Liability   **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
|    of Veteran's Benefits | ☐ 350 Motor Vehicle   ☐ 370 Other Fraud |     Act | ☐ 861 HIA (1395ff) |     Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle   ☐ 371 Truth in Lending | ☐ 720 Labor/Management | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| ☐ 190 Other Contract |     Product Liability   ☐ 380 Other Personal |     Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal   Property Damage | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 196 Franchise |     Injury   ☐ 385 Property Damage | ☐ 751 Family and Medical | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information |
| | ☐ 362 Personal Injury -   Product Liability |     Leave Act | |     Act |
| |     Medical Malpractice | ☐ 790 Other Labor Litigation | | ☐ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS**   **PRISONER PETITIONS** | ☐ 791 Employee Retirement | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights   **Habeas Corpus:** |     Income Security Act | ☐ 870 Taxes (U.S. Plaintiff |     Act/Review or Appeal of |
| ☐ 220 Foreclosure | ☐ 441 Voting   ☐ 463 Alien Detainee | |     or Defendant) |     Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment   ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | ☐ 950 Constitutionality of |
| ☐ 240 Torts to Land | ☐ 443 Housing/   Sentence | |     26 USC 7609 |     State Statutes |
| ☐ 245 Tort Product Liability |     Accommodations   ☐ 530 General | | | |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities -   ☐ 535 Death Penalty | **IMMIGRATION** | | |
| |     Employment   **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities -   ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| |     Other   ☐ 550 Civil Rights |     Actions | | |
| | ☐ 448 Education   ☐ 555 Prison Condition | | | |
| |     ☐ 560 Civil Detainee - | | | |
| |     Conditions of | | | |
| |     Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from Another District *(specify)*   ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. 1332
Brief description of cause:
Pharmaceutical Product Liability Action

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.   DEMAND $   CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*   JUDGE Kennelly   DOCKET NUMBER MDL-2545-NDIL

DATE   8/13/14   SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

JS 44 Reverse (Rev. 12/12)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerk(s) in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.** **Origin.** Place an "X" in one of the six boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.